# Waiver of the Application of Conflict of Interest Laws for Members of the President's Commission on Strategic Forces

Members of the President's commission on Strategic Forces are special government employees for purposes of the conflict of interest laws, based on a Department of Defense determination. Under 18 U.S.C. § 208(a), such employees may not participate without a waiver in any particular matter in which they or their employers have a financial interest.

Waivers of the application of § 208(a) for members of the Commission may be granted by the Counsel to the President. This authority is based in part on 3 C.F.R. § 100.735–32, by which the President delegated to the Counsel his authority to grant waivers under 18 U.S.C. § 208(b)(1) for "Presidential appointees to committees, boards, commissions, or similar groups established by the President."

The statutory standard for the grant of waivers clearly anticipates the exercise of discretion by the appointing official. Factors suggested by § 208(b)(1) include the nature and magnitude of the employee's financial interest, the nature of the anticipated services to the government, and the likelihood that integrity of those services may be compromised. Other non-statutory factors might be considered with caution, such as the ability to reduce conflict by public disclosure of the employee's interest, the government's need for the employee's services, and the agency's general policy or practice in granting waivers.

January 19, 1983

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
DEPARTMENT OF DEFENSE

You have asked us to advise you concerning possible waivers of the application of a conflict of interest statute, 18 U.S.C. § 208, for particular members of the President's Commission on Strategic Forces. We have agreed to assist you (1) by identifying the appropriate official(s) to consider and, if appropriate, approve such waivers; and (2) by describing some of the factors that may be considered by that official in applying the waiver standard. We understand that your inquiry was prompted by the case of a potential member of the Commission who has an ongoing consulting arrangement with one of the primary contractors for the MX missile project.

We understand from our discussions and the materials you have provided that the Department of Defense has determined that members of this advisory committee are special government employees for purposes of the conflict of interest laws. *See generally* 18 U.S.C. § 202; Federal Personnel Manual, Appendix C. As you know, as special government employees, the members of this advisory committee may not participate in any particular matters in which they,

10

or their employers, have a financial interest. 18 U.S.C. § 208(a). This restriction on an individual employee's activities may be waived if "the official responsible for the appointment to [the employee's] position" determines in writing that the interest of the employee "is not so substantial as to be deemed likely to affect the integrity of the services which the government may expect" from the employee. 18 U.S.C. § 208(b)(1). Because it is anticipated that the Commission will be advising the President concerning the MX missile and its possible basing modes, the application of § 208 to this situation has been raised.

## I. Appropriate Official to Grant Waiver
## Under 18 U.S.C. § 208(b)

As mentioned above, § 208(b) authorizes the "Government official responsible for the appointment [of an employee] to his position" to waive the application of § 208(a) to the employee in certain circumstances. In determining which officials can exercise such power, we consider two questions: (1) which official is "responsible for the appointment" of the members of the Commission; and (2) has the official "responsible for the appointment" delegated his authority under this provision to any other person(s).

With respect to the first question, we believe the President is the official "responsible for the appointment" of the members of the Commission. Pursuant to Executive Order No. 12400, members of the Commission are "appointed or designated by the President" to membership on the Commission. There is no provision that any other official should be responsible for the appointment of any of the members to the Commission. In the process of drafting Executive Order No. 12400, members of the White House Counsel's Office and the General Counsel's Office of the Office of Management and consistently expressed an intent and understanding that the Commission was to be a Presidential Advisory Committee, with control over the appointment and dismissal of members of the Commission to be vested solely in the President. Accordingly, in our view, the President is the "Government official responsible for the appointment [of the members] to [their] position[s]" within the meaning of 18 U.S.C. § 208.

Even though the President is the appointing "Government official" within the meaning of 18 U.S.C. § 208, he may, pursuant to 3 U.S.C. § 301, delegate his authority with respect to "any function vested in the President by law" to "the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate." Such delegation must be in writing and published in the Federal Register. *Id.* In addition, the President has certain inherent authority, which is recognized but not specifically enumerated in 3 U.S.C. § 302, to delegate authority to officials who do not meet the requirements set forth in § 301. In Executive Order No. 11222, Part V, as amended, the President delegated his authority to grant waivers under 18 U.S.C. § 208(b) with respect to many Presidentially appointed officers and employees, while specifically exempting

11

from this delegation, among other persons, "Presidential appointees to committees, boards, commissions, or similar groups established by the President." In 3 C.F.R. § 100.735–32, however, the President delegated to the Counsel to the President the authority reserved in the above provision. Although the Counsel to the President is not appointed by the President with the advice and consent of the Senate, this delegation has existed at least since 1968 and has never, to our knowledge, been challenged by Congress. While we do not need to pass on that issue for the purpose of this memorandum, the delegation of power to the Counsel to the President would appear to fall within the President's inherent power to delegate, and thus, the President and the Counsel to the President currently appear to have authority to grant a waiver under 18 U.S.C. § 208(b) to members of the Commission with respect to their service on the Commission.

An argument could be made that § 4 of Executive Order No. 12400, which created the Commission, also delegates to the Secretary of Defense the President's authority to grant waivers under 18 U.S.C. § 208. We conclude, however, that if the President wishes the Secretary of Defense to exercise the President's authority under § 208(b), the proper course would be to execute a new, more specific memorandum under 3 U.S.C. § 301, specifically delegating such authority to the Secretary of Defense. Section 4 of Executive Order No. 12400 delegates the "performance" of the President's "functions" under the Federal Advisory Committee Act (FACA), as amended, 5 U.S.C. app. § 1, to the Secretary of Defense. The FACA, 5 U.S.C. app. § 8, provides, *inter alia*, that each agency head, in this case the Secretary of Defense, "shall establish uniform administrative guidelines and management controls for advisory committees" and appoint an Advisory Committee Management Officer to "exercise control and supervision" over the committee. The FACA, however, does not specifically address conflict-of-interest problems related to members of advisory committees. Thus, granting a waiver of conflicts of interest under 18 U.S.C. § 208 may not be a "function" "performed" under the Federal Advisory Committee Act. In light of the fact that the President expressly reserved to himself in Executive Order No. 11222, as amended, the authority to grant waivers under 18 U.S.C. § 208(b), it is doubtful that the delegation of authority in Executive Order No. 12400 is sufficiently specific to constitute a delegation of the Presidential waiver authority. For these reasons, if the President wishes the Secretary of Defense, rather than the Counsel to the President, to assume the authority to grant waivers for members of the Commission, we conclude that a new memorandum of delegation should be executed. In addition, if the President wishes some other official to exercise this authority, he may execute a memorandum delegating this to any official appointed by the President with the advice and consent of the Senate. *See* 3 U.S.C § 301.

## II. The Waiver Standard

Section 208(b)(1) provides that waivers of the restriction of § 208(a) may be granted upon a written determination that the disqualifying interest of the

employee is *"not so substantial as to be deemed likely to affect the integrity of the services which the government may expect"* from the employee. (Emphasis added.) This standard clearly anticipates the exercise of discretion and personal judgment by the appointing official. We have not reviewed the facts of this matter in sufficient detail to make our own judgment concerning a waiver in this case, nor would it be appropriate for us to do so inasmuch as the responsibility of the Commission will relate to matters that are beyond our knowledge and expertise. The discussion that follows is intended simply to direct attention to some of the factors which are generally used to inform such judgments.

The standard set forth in the statute suggests two lines of inquiry, focusing on (1) the financial interest and (2) the services of the employee. In our view, it is appropriate to consider any factors that develop either of these lines of inquiry suggested by the statute.

There are numerous factors that may help to clarify the nature and magnitude of the employee's financial interest. Certainly it is helpful to quantify the dollar amount of the interest, or its outer limits. In this case, the consulting contract presumably is worth $50,000, and possibly more if the contract is extended or additional contracts are expected. These factors might be compared with the potential member's overall income, and with his net worth, to obtain some sense of the relative value of the consulting contract(s) to him.[1] The type of the financial interest may also be important. In this case, the financial interest arises from an employment relationship. While employment relationships frequently create stronger and more personal ties than ordinary investment relationships, the tenure and details of this particular relationship could be significant factors in making a waiver determination. For example, one might find it more difficult to justify a § 208(b) waiver if the potential member's contract activities involve defense issues that will be before the Commission than if they involve giving technical advice on completely unrelated subjects. Similarly, a long or frequent association with the contractor might also counsel against a waiver in this case.

The employee's anticipated services to the government should also be examined. We think that, in this regard, it is appropriate to consider both the likelihood that the integrity of the employee's services may be compromised, and the nature and significance of the services themselves. In this case, the employee's services will presumably involve giving advice on a subject of direct concern to a present client of his consulting firm. There appears to be little doubt that the contractor will be affected by the government's final decision regarding the MX, but the impact of the potential member's advice through the advisory committee may be somewhat more remote. On the other hand, one might predict that the advice would be particularly influential in light of the potential member's background and stature. The potential value to the contractor of the potential member's service on this advisory committee should

---

[1] Although the value of the consulting contract in relation the potential member's annual income and overall net worth may indeed be considered, it should not overshadow the significance of the absolute value of the contract, which is, in our view, a far more important criterion in making a waiver decision.

also be considered. In this regard, one may want to consider the value of the MX contract to the contractor in absolute dollars and as a proportion of the company's anticipated receipts for upcoming years.

There are undoubtedly numerous other factors that might be considered. Some of these derive more justification from common sense and other disquali-fication standards than they do from the actual text of § 208(b). *See, e.g.,* Decisional Officials' Participation in Rulemaking Proceedings, Administrative Conference of the United States, 1980 Report, at 51–55. *See also* Code of Professional Responsibility, American Bar Association (in particular Canons 4, 5 and 9). For example, public disclosure of the employee's interest and the government's need for the services of the particular employee are factors that could be compelling in some circumstances.[2] We would also advise that some deference be given to the agency's general policy or practice in granting waivers under § 208(b)(1). Accordingly, we are not prepared to reject all consideration of factors that do not reflect directly the statutory standard. We must urge, however, that non-statutory factors be used with caution and that the weight given to them be analyzed in light of the fact that they are not directly articulated in the statutory standard.

Numerous other nonstatutory factors have been suggested for use in this case. We think that many of these factors, especially when taken in their combination, could confuse rather than clarify the inquiry. For example, the importance of the advisory committee to the government's national security interests is a factor that can be used convincingly either to justify or deny a waiver.[3] The same can be said of the temporary, short-term nature of the Commission's work. It also can be counterproductive, in our view, to focus on the reputation for personal integrity of the employee. The integrity factor is extremely subjective. As we see it, § 208 was enacted, in large part, to elimi-nate such subjective judgments from the disqualification process. Furthermore, we fear that a heavy or frequent reliance upon an official judgment of the employee's personal integrity will detract from the public acceptance of the waiver process, as well as make it more difficult to deny waivers because of the possible negative implication of a denial with respect to the integrity of the employee. Accordingly, we must counsel against a reliance upon a subjective, personal evaluation of an individual's reputation for integrity in considering the propriety of § 208(b)(1) waivers.

In the end, waiver decisions are committed to the judgment of the appointing official. Although the statutory standard should guide the exercise of that discretion, Congress has clearly left that ultimate decision in the hands of the appointing official. It is the responsibility of that official to exercise his considerable discretion soundly and in good faith, after a careful and thorough

---

[2] In this case, public disclosure of the potential member's contractual interest would help to eliminate many of the potential adverse effects of the interest.

[3] In addition, it should be noted that a "national interest" factor was suggested to Congress as a basis for granting waivers when § 208 was enacted, but such a test was never adopted. *See Conflict of Interest Hearings on H.R. 8140 Before the Senate Judiciary Comm.,* 87th Cong., 2d Sess. 46 (1962) (testimony of Roswell Perkins).

consideration of all of the pertinent facts. We are not in a position to advise you about the pertinent facts or about the relative weight that should be assigned to the various factors discussed above. We hope this opinion will assist the decision-maker in his task, but we do not intend for it to imply any judgment on our part concerning the proper direction of that decision.

The Office of Government Ethics has reviewed this opinion and has advised us that it agrees with the conclusions set forth above.

RALPH W. TARR
*Assistant Attorney General*
*Office of Legal Counsel*